DANIEL W. SHOYER and Another, Copartners Doing Business under the Firm Name and Style of D. W. SHOYER & CO., Appellants, v. EDMUND WRIGHT-GINSBERG CO., INC., Respondent.

First Department, November 14, 1924.

Contracts — action on contract whereby defendant agreed to furnish space to plaintiffs for sales operation, advance eighty-five per cent on net outstandings of plaintiffs, and guarantee credit risks only — advances were made on sales completed by delivery — agreement did not constitute del credere factorship making defendant liable for all orders taken — defendant's liability was limited to accounts receivable — defendant not liable for negligence of sales agent in taking unsigned orders — defendant is entitled to judgment on counterclaim for advances and is not required first to look to goods.

A *del credere* factorship was not constituted between the plaintiffs and the defendant so that the defendant became liable as principal for all goods ordered from the plaintiffs by customers, by a contract between the parties, whereby the defendant agreed to assign space in its loft suitable for the sale of plaintiffs' merchandise, to check and guarantee plaintiffs' accounts as approved by defendant's credit department, to advance eighty-five per cent of plaintiffs' net outstandings subject to plaintiffs' call, to pay the remaining fifteen per cent monthly, provided sufficient goods were shipped in the current month to protect the defendant for goods returned, and to assume credit risk only.

Under the contract, the defendant's liability was limited to accounts receivable, that is, to amounts due for goods actually delivered to customers, as to whom it guaranteed the credit risk only, and it never assumed the obligations of a *del credere* factor.

Furthermore, since the defendant was not a *del credere* factor, it was not liable for any negligence of a sales agent in transmitting unsigned orders, for it never undertook by its contract to procure orders for plaintiffs' goods.

The defendant is entitled to judgment on its counterclaim for advances without first looking to the goods for satisfaction, for the advances made by the defendant were not made against merchandise but were made against accounts receivable.

APPEAL by the plaintiffs, Daniel W. Shoyer and another, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 15th day of May, 1923, upon the dismissal of the complaint upon

the merits at the close of the plaintiffs' case and upon the verdict of a jury, rendered by direction of the court in favor of the defendant on its counterclaim, and also from an order denying the plaintiffs' motion for a new trial made upon the minutes.

*Konta, Kirchwey, France & Michael* [*Karl W. Kirchwey* of counsel; *Royal W. France* and *Edward W. Drucker* with him on the brief], for the appellants.

*Rosenberg & Ball* [*Wilbur L. Ball* of counsel; *Chandler Bennitt* with him on the brief], for the respondent.

DOWLING, J.:

The complaint herein sets forth three causes of action. The first and second are substantially alike, alleging the written contract hereinafter set forth and averring that the ten per cent commission payable to defendant was a *del credere* commission as well as a commission for the sale of goods and for defendant's services, and that in consideration thereof defendant undertook to act as *del credere* factors for plaintiffs and to check and guarantee their accounts; that between March 20, 1919, and March, 1920, defendant sold and furnished to the plaintiffs' orders for the manufacture of goods known as "Chevalette," amounting to $66,405.92, which goods the plaintiffs manufactured especially for said orders and billed and delivered to defendant, and which defendant accepted; and that after crediting defendant with its advances, commissions, discounts and returns, there was a balance due plaintiffs of $6,673.78. The second cause of action also alleges that by said agreement defendant guaranteed the sales, contracts of sale and orders for the manufacture of said goods by plaintiffs, and the accounts created by such sales and orders, "and that the purchasers thereof shall well and truly pay for and perform all and singular the terms and conditions of said sales, orders and contracts for sale for said goods, and guaranteed, promised and agreed to pay to the plaintiffs the purchase price and amount of said sales, orders and contracts of sale not paid or not performed by the purchasers of said goods according to the terms and conditions of said sales, orders and contracts of sales."

The third cause of action adds to the first the averment that it became and was the duty of defendant, and defendant undertook, to exercise due care and diligence in selling and supervising the sale of said goods and in procuring *bona fide* and valid orders for such sales and in delivering goods in accordance with such sales, orders and contracts and with the custom and practice of textile manufacturers and their selling agents and factors, and charges that defendant failed to perform this undertaking. During the

trial this third cause of action was amended by incorporating therein the agreement between the parties dated November 5, 1919.

The answer of the defendant, besides containing a general denial, set up a counterclaim wherein it was alleged that it had made diligent efforts to sell the goods within the time prescribed by the agreement of November 5, 1919, hereinafter referred to, but was unable to do so, and it thereupon notified plaintiffs that it had not disposed of the goods and requested plaintiffs to dispose of them; that plaintiffs failed so to do. Defendant demanded judgment for its advances and other charges under the contract of March 20, 1919, amounting to $21,263.78, payment. of which had been demanded and refused.

The plaintiffs were manufacturers of textiles. The defendant corporation was a factor. On March 20, 1919, the following contract was entered into between plaintiffs and defendant:

" Telephone                                         Cable Address
" Gramercy 6785                             Edjacart New York
          " EDMUND WRIGHT-GINSBERG CO., INC.,
             " Factors and Commission Merchants
                 " 288 Fourth Avenue
' Messrs. D. W. SCHOYER & Co.,    " NEW YORK, *March* 20, 1919.
                         " 30 Main Street,
                              " Brooklyn, N. Y.:

" GENTLEMEN.— In accordance with our conversation with your Mr. Schoyer at our offices yesterday, we herewith give you a statement of the terms and conditions upon which we agree to act as factors for your company. ·

" We agree to assign space in our loft suitable for the sale of your merchandise and to make no charge for local telephone calls, stationery or deliveries in the Manhattan district.

" We also agree to check and guarantee your accounts as approved by our credit department. We further agree to advance you eighty-five percent (85%) of your net outstandings, subject to your call. The remaining fifteen percent (15%) we will settle monthly provided that sufficient goods will be shipped in the current month so that we may be protected for the goods that your customers may return.

" You agree to bank through us all the piece goods manufactured by your firm.

" We shall receive as compensation for our services ten percent (10%) commission on the net value of the merchandise. This is to include our commissions as well as that of the selling agent.

" All merchandise claims and disputes or controversies relating to the merchandise itself must be settled by you or by us, if you prefer, at your risk and expense. We assuming the credit risk only.

" In our monthly statements to be rendered to you, we are to show the average due date of accounts receivable, to which is to be added ten days for collection of bills. Interest is to be computed at the rate of six percent (6%) per annum Pro and Con. Our bill heads of your sales to state that the account is assigned and payable to our company.

" We understand that the terms you have agreed to sell your goods are 2/10/60.

" This agreement shall continue indefinitely but may be terminated upon ninety days notice in writing by either party.

" Your acceptance endorsed at the foot of this letter shall constitute the contract between us.

" Yours very truly,

" EDMUND WRIGHT-GINSBERG CO., INC.

" D. W. SHOYER & CO.　　　　EDMUND WRIGHT

　　　" by D. W. SHOYER　　　　*Sec'y and Treas.*"

The manner in which business was conducted between the parties was as follows: Charles Noonan, a selling agent, who had his place of business with defendant, took orders from customers on order forms supplied by defendant. These orders were made out in triplicate. When Noonan obtained an order he first submitted it to Edmund Wright, the defendant's secretary and treasurer, who, if he approved the order, stamped it " O. K., E. W." The customer received two copies and was supposed to sign and return one copy. The copy stamped " O. K., E. W." was transmitted to the plaintiffs; the copy signed by the customer was retained by Noonan as his property. On receipt of orders, plaintiffs proceeded to make up the goods called for; when color specifications accompanied the order, the goods were also dyed; when such color specifications were not given, the goods were made up and held " in the grey " to await dyeing instructions. Up to about June, 1919, the bills rendered to purchasers were under the name " Edmund Wright-Ginsberg Co., Inc.," and below that and somewhat to the side " Department Charles Noonan " or " Dept (Chas. Noonan)." After June, 1919, bills were rendered in the name of Charles Noonan. From time to time defendant made advances to plaintiffs up to eighty-five per cent of the purchase price of goods sold and delivered.

Thereafter it developed that Noonan had not received signed

orders from various customers whose goods had been made up by plaintiffs, the reason assigned being that some of them refused to sign orders, and others had asked that deliveries to them be held up as business was bad at the time. A controversy between plaintiffs and defendant as to the responsibility for these undelivered orders then arose, and on November 5, 1919, the parties entered into an agreement whereby the defendant agreed to give plaintiffs dyeing instructions for all merchandise theretofore ordered of plaintiffs for which no dyeing instructions had been given, and to make further advances to plaintiffs on such goods; and plaintiffs agreed to deliver all such goods to a converter for dyeing. Defendant was then given ninety days from the receipt of goods from the converter to sell them; and in the event of its failure to do so, the plaintiffs were given the right to sell the goods at the best price obtainable. In either case, if the goods sold for less than the prices named in the orders under which they were made up, the question who should bear the loss was left for determination in a suit to be brought by plaintiffs against defendant; and if sold for more than such prices, the division of the excess was to be determined by the attorneys for the parties or an arbitrator chosen by them.

The question presented by this appeal resolves itself into one of law, based on the construction of the original agreement between the parties. The learned trial court rejected the theory that it constituted a *del credere* factorship for plaintiffs by defendant, as the result of which the defendant became in effect the purchaser of the goods for which plaintiffs had received orders, or was substituted for the purchaser and became bound to pay, not conditionally, but absolutely in the first instance; and according to this theory, when the factor had sold goods on credit and sent an account of sales to his principal, the latter might recover the price of the goods from the factor without showing that the principal had endeavored to collect the moneys of the persons to whom the factor sold the goods. (*Cartwright* v. *Greene,* 47 Barb. 9.)

This ruling of the learned trial court we believe to be correct. The rights of the parties must be determined by the original contract between them, dated March 20, 1919, save as it may have been modified by the supplemental agreement of November 5, 1919. Upon the precise question at issue, the supplemental agreement, trial counsel for plaintiffs conceded upon the trial that it had " no value of any kind " as supporting his theory of a *del credere* factorship. Considering then, the original agreement, we find no support in its terms for plaintiffs' contention. It is plain and unambiguous, and neither requires nor permits extrinsic evidence to aid in its interpretation. The important parts of

defendant's obligations are contained in the following clauses of the agreement:

" We also agree to check and guarantee your accounts as approved by our credit department.   We further agree to advance you eighty-five percent (85%) of your net outstandings, subject to your call. The remaining fifteen percent (15%) we will settle monthly provided that sufficient goods will be shipped in the current month so that we may be protected for the goods that your customers may return.     *     *     *

" All merchandise claims and disputes or controversies relating to the merchandise itself must be settled by you or by us, if you prefer, at your risk and expense.   We assuming the credit risk only."

The agreement further provides: " In our monthly statements to be rendered to you, we are to show the average due date of accounts receivable, to which is to be added ten days for collection of bills."

It will be noted that in the agreement there is no mention of sales, as such.   Only when the sales have become accounts, namely, accounts receivable, by the delivery of the goods, do the obligations of the defendant under this contract begin.   Even then the defendant's guaranty was a guaranty of credit risk only; for even at this stage it was provided that, if a customer after delivery should reject the goods on account of a claim of defective quality or for any reason whatever other than credit, this was a matter to be settled by the plaintiffs, or by defendant if plaintiffs preferred, but at the plaintiffs' risk and expense.

Significant also is the language with respect to advances. Advances and guaranties obviously are interdependent.   A factor advances only against merchandise or accounts receivable which he considers good; and it will be noted that the defendant in this case agreed to advance eighty-five per cent of " your [plaintiffs'] net outstandings," *i. e.*, accounts receivable, not eighty-five per cent of sales contracts.   Even then the remaining fifteen per cent was to be settled monthly only after sufficient goods were shipped by the plaintiffs, so that the defendant could be protected for goods that customers might have returned for something other than credit reasons.

That this is the correct construction of the agreement between the parties is confirmed by their course of dealing.   The regular monthly accounts sales put in evidence by plaintiffs themselves, sent from defendant to plaintiffs during the entire course of their connection and commencing long before the present controversy, were accounts stating each month's total sales in the sense only of sales completed by delivery and invoicing, and not the total

orders taken.   Correspondingly, in the monthly accounts current, sent from defendant to plaintiffs (being exactly as implied, a statement of the current account between the parties), the only sales with which plaintiffs were credited were the sales consummated by delivery and invoicing.   Nowhere in the regular accounts thus stated between the two parties was there any credit to plaintiffs given or sought, for orders taken by the selling agent but unmatured. This was frankly admitted by plaintiffs' principal witness, Sydney C. G. Bass, their bookkeeper and superintendent of their factory, who testified that he understood perfectly, month by month, that the sales plaintiffs were being credited with on the monthly accounts of sales were actual sales of goods delivered to the customers during that month.

The indorsement " O. K., E. W." upon the orders by Edmund Wright is shown by the testimony of plaintiffs' witness Noonan to have been an approval of credit only.

The conclusion, therefore, is reached that, under the unambiguous terms of the contract in question, defendant's liability was limited to accounts receivable, that is, to amounts due for goods actually delivered to customers, as to whom it guaranteed the credit risk only; and that it never assumed the obligations of a *del credere* factor.

This result also disposes of any theory that defendant could have become liable for the negligence of Noonan in transmitting orders, since defendant never undertook to procure orders, but, as has been shown, only to guarantee accounts receivable for goods actually sold.

Defendant was entitled to judgment on its counterclaim. Appellants rely upon the rule laid down in the case of *Newburger-Morris Co.* v. *Talcott* (219 N. Y. 505, at p. 511), that a factor seeking to recover advances on merchandise, if made pursuant to his factoring contract, must look first to the goods themselves for satisfaction, and may recover the balance only from the principal. In the present case the contract did not obligate defendant to advance on merchandise; such advances were an accommodation contained in the phrase " we further agree to advance you eighty-five percent (85%) of your net outstandings, subject to your call." This meant an advance against net outstanding accounts receivable, and did not constitute an advance against merchandise, nor oblige defendant to first have recourse to the goods remaining in its possession.

Appellants also now contend that under the supplemental contract of November 5, 1919, they had an indefinite time within which to dispose of the merchandise, though they admit that

" perhaps a reasonable time is to be implied." I am of the opinion that plaintiffs were limited to a reasonable time within which to effect a sale of the goods. By the supplemental agreement, defendant was given ninety days within which to sell the merchandise. Four months more elapsed before plaintiffs began this action (or seven months in all from the time the supplemental contract was signed), and it was nearly three years thereafter before the case came on for trial. It is obvious that the reasonable time given to plaintiffs to effect a sale had long since expired. Moreover, on June 22, 1920, plaintiffs wrote defendant that defendant " having failed to dispose of the goods in accordance with the terms of this paragraph and we [plaintiffs] not having elected to dispose of them in accordance with paragraph 6 of the said supplemental agreement, the matter reverts to its status under our original contract with you." This was notice that plaintiffs did not propose to exercise their right or duty to endeavor to sell the goods in question, and relieved defendant of any necessity of waiting any longer for plaintiffs to do so.

The judgment and order appealed from should, therefore, be affirmed, with costs to respondent.

CLARKE, P. J., SMITH, MERRELL and McAVOY, JJ., concur.

Judgment affirmed, with costs.